**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CR. No. C-07-418 (1) |
| | § | C.A. No. C-08-272 |
| ORLANDO ZARATE, | § | |
| | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Orlando Zarate's ("Zarate") motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. (D.E. 77; D.E. 92.)[1] Also before the Court is the government's response, which includes a motion to dismiss. (D.E. 89, 90.)

On August 12, 2009, the Court held an evidentiary hearing to address one of Zarate's claims for relief. Specifically, the Court heard testimony and argument regarding Zarate's claim of ineffective assistance of counsel due to counsel's alleged failure to appeal as requested. Zarate was represented at the hearing by appointed counsel, Fred Jimenez.

For the reasons set forth on the record at the conclusion of the hearing, and for the reasons set forth in more detail herein, the Court denies Zarate's § 2255 motion. The Court also denies Zarate a Certificate of Appealability (COA).

---

[1] Docket entry references are to the criminal case, CR. No. C-07-418.

# I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

# II.  BACKGROUND

## A.     Criminal Proceedings

The factual and procedural background of the case are set forth in the Court's order setting the case for an evidentiary hearing (D.E. 93), and familiarity with that order is assumed.  As noted therein, Zarate's guilty plea was pursuant to a written plea agreement, which contained a limited waiver of his appellate rights, subject to certain exceptions, and also a waiver of his right to file a § 2255 motion. (D.E. 50.)

During the rearraignment, the Court expressly questioned Zarate regarding his waiver of § 2255 rights:

> THE COURT: Now, your plea agreements contain a waiver of the right to appeal in paragraph seven.  The waiver is not only–you have not only waived the right to directly appeal to the Fifth Circuit Court of Appeals your sentence and conviction, but also to collaterally attack it.  That's another provision of federal law, the specific statute is 2255.  It's another way for a defendant to try to set aside his conviction or sentence. I need to cover this with you carefully. Were each of you aware that this waiver of the right to appeal and to collaterally attack your sentence was in the plea agreement before you signed it?
>
> (Both defendants answer yes.)
>
> THE COURT:  Did you discuss the waiver with your lawyer and the effect that it has on your rights?
>
> (Both defendants answer yes.)
>
> THE COURT:  Do each of you feel like you understand the waiver and its effect on your case?
>
> (Both defendants answer yes.)

>THE COURT: Do you have any questions that you would like to ask
>me at this time about the waiver of appeal?
>(Both defendants answer no.)

(D.E. 81, Rearraignment Transcript ("R. Tr.") at 13-14.)

When asked about his plea agreement, Zarate told the Court that he signed the agreement voluntarily, that he read it and discussed it with his lawyer before he signed it, and that he understood the terms of the agreement. (R. Tr. at 9.) He further testified that no one had made him any offers to get him to plead guilty other than what was in the plea agreement. (R. Tr. at 9.)

At the rearraignment, the Court informed Zarate that he faced a mandatory minimum sentence of 5 years and the possibility of up to forty years' imprisonment, plus a fine of up to two million dollars, at least four years of supervised release, and a $100 special assessment. (R. Tr. at 10.) Zarate testified that he understood. (R. Tr. at 10.)

After accepting Zarate's guilty plea, the Court ordered that a Presentence Investigation Report ("PSR") be prepared and set the case for sentencing. (D.E. 52.) The PSR concluded that Zarate was a leader in the conspiracy and thus recommended a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a). (PSR at ¶ 26.) His advisory guideline range was 87 to 107 months. (PSR at ¶ 48.) His appointed counsel, Robert Zamora, filed written objections to the Presentence Investigation Report. (D.E. 55.) He objected both to the leadership enhancement and the PSR's failure to recommend safety valve relief.[2] (D.E. 55.)

After hearing the evidence at sentencing, the Court determined that only a three-level leadership enhancement was warranted, because Zarate was a "manager or supervisor" pursuant to

---

[2] A defendant is not eligible for safety valve relief if he is an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines. 18 U.S.C. § 3553(f); see also U.S.S.G. § 5C1.2(a)(4).

3

U.S.S.G. § 3B1.1(b), but not an "organizer or leader." (D.E. 82, Sentencing Transcript ("S. Tr.") at 94-96.) Zarate remained ineligible for safety valve relief, however. (See supra note 2.) His resulting advisory guideline range, therefore, was reduced to 78 to 97 months. The Court sentenced Zarate to the low end, 78 months in the custody of the Bureau of Prisons, to be followed by a five-year term of supervised release, and imposed a $100 special assessment. (S. Tr. at 97.)

Notably, at the conclusion of the sentencing hearing, immediately after imposing the sentence, the Court asked Zarate: "You in your plea agreement waived certain rights to appeal, do you recall that?" and Zarate responded "Yes, sir." (S. Tr. at 97.) Zarate did not appeal. He timely filed his § 2255 motion.

**B.    Evidentiary Hearing**

On August 12, 2009, the Court held an evidentiary hearing to address Zarate's claim that, immediately after sentencing, he told Zamora to appeal, and that his counsel did not do so. Both Zarate and Zamora testified.

Zarate testified first. He maintained that he had told Zamora in the holding cell immediately following the sentencing that he wanted to appeal. He claims that Zamora spoke to him for only a few minutes, and then left, but said he would return. Zarate claims Zamora never returned to the holding cell and that he never saw or heard from him again. Zarate admitted, however, that he never called Zamora or wrote him any letters after sentencing at any point to make sure that Zamora had appealed or to learn the status of his appeal. He also never wrote to this Court to inquire about any appeal. As to his waiver of appellate rights, Zarate repeatedly stated that either he did not remember the explanations of the waiver given him by counsel and the Court, or that he did not understand them.

Zamora, consistent with the statements in his prior affidavit in this case, testified that immediately after sentencing, he spoke with Zarate and explained his sentence to him. Although Zarate was "not satisfied" with his sentence of 78 months, Zamora testified that he reminded Zarate that he had waived his right to appeal. According to Zamora, Zarate indicated that he understood that and accepted that. Zamora was confident that Zarate never asked him to appeal and that Zarate acknowledged his appellate waiver. He further testified that, had Zarate asked him to appeal, he would have.

As the Court stated at the conclusion of the hearing, it was faced with a credibility determination on this issue. Based on the testimony presented at the evidentiary hearing and the Court's own involvement as the presiding judge at both rearraignment and sentencing, the Court found Zamora's testimony far more credible that Zarate's. In particular, the Court found inherently unbelievable Zarate's testimony that, mere minutes after being advised again that he had waived his right to appeal, he asked his counsel to file an appeal. The fact that he never followed up with Zamora or inquired about the status of any appeal further buttresses the Court's conclusion that Zarate never asked Zamora to appeal.

On the other hand, the Court found Zamora to be a credible witness. Not only did he testify consistent with his prior affidavit, but the Court finds that he had no incentive *not* to file an appeal, had he been asked to do so. As Zamora testified, he has filed notices of appeal on behalf of clients in federal court. The process takes minutes. Moreover, he has handled appeals before the Fifth Circuit and could have done so in this case, had he been asked.

### III.  MOVANT'S ALLEGATIONS

As noted in the order setting the evidentiary hearing, Zarate's written § 2255 motion lists five grounds for relief.  Zarate's first and fourth grounds both allege that he asked Zamora to appeal and that Zamora failed to do so.  In his first ground, he merely alleges that Zamora failed to file a notice of appeal as requested.  In his fourth, he contends that he wanted Zamora to appeal the leadership enhancement applied by the Court at sentencing.

Two of his remaining three grounds challenge the Court's application of the leadership enhancement.  The other contends his counsel was ineffective at sentencing and on appeal for failing to object to the Court's alleged failure to give a written statement of reasons for its imposition of sentence, pursuant to 18 U.S.C. § 3553(c).

### IV.  ANALYSIS

**A.     Counsel's Alleged Failure to Appeal**

When evaluating an ineffective assistance claim based upon counsel's alleged failure to file an appeal, this Court is guided by Roe v. Flores-Ortega, 528 U.S. 470 (2000).  That case explains that where a defendant asks that an appeal be filed, and the attorney does not file one, the attorney's conduct is deficient.  Flores-Ortega, 528 U.S. at 478.  As noted by the Court at the conclusion of the evidentiary hearing, the Court found that Zarate was not credible, and found that Zamora testified credibly.  Thus, the Court found that Zarate never asked Zamora to file an appeal on his behalf. Accordingly, the fact that Zamora did not file an appeal was not *per se* deficient, because the Court found that Zarate never asked him to appeal.  See id.

The Court turns next, then, to the issue of whether Zamora **consulted** with Zarate about his

appellate rights. As explained by the Supreme Court in Flores-Ortega:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question of whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. . . . If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.

528 U.S. at 478.

Zamora credibly testified that, after sentencing, he had a discussion with Zarate about his waiver of appellate rights. He testified that Zarate understood the waiver and accepted it (which is also consistent with what Zarate told the Court mere minutes earlier), and that Zarate never asked him to appeal. The Court thus finds that Zamora did consult with Zarate about his appellate rights and that Zamora was not deficient. See Flores-Ortega, supra. For these reasons, Zarate's claim that he was denied effective assistance of counsel due his counsel's failure to appeal fails and is denied.

**B.      Remaining Claims**

As noted above, Zarate's § 2255 also motion contains other claims, all of which either allege ineffective assistance of counsel at sentencing, or that the Court erred at sentencing. For the reasons discussed herein, the Court concludes that Zarate's remaining claims are barred by his waiver.

Notably, Zarate's § 2255 motion does not challenge the validity of his waiver. In any event, it is clear from the rearraignment that Zarate understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. See United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994) (waiver is knowing if defendant understood he had a right, and understood he was giving it up); see supra at

7

2-3 (setting forth Zarate's testimony from rearraignment concerning his § 2255 waiver).

Zarate's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). In this case, Zarate expressly acknowledged that he understood the § 2255 waiver and that he had no questions about it. Zarate has produced nothing that rebuts the strong presumption of truthfulness attached to his sworn statements. See Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84. Put simply, Zarate's sworn statements establish a knowing and voluntary guilty plea, and a knowing and voluntary waiver of his appellate and § 2255 rights.

Zarate's remaining claims are all unrelated to his plea and fall within the scope of his § 2255 waiver. They are therefore barred and not properly before the Court. See Wilkes, 20 F.3d 651 (enforcing defendant's voluntary and knowing waiver of § 2255 rights).

**C.     Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Zarate has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and

8

argument on the very issues the court has just ruled on would be repetitious.").[3]

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Zarate is not entitled to a COA as to any of his claims. That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the failure to appeal. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of his remaining claims.

---

[3] As of December 1, 2009, absent contrary Congressional action, amended Rule 11(a) of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS will become effective. This rule will require a district court to issue or deny a COA at the time the court enters a final order adverse to the movant. Although amended Rule 11(a) is not yet effective, the practice it requires is a sound one that the Court employs now. Nothing in the current version of the § 2255 rules prohibits the Court from addressing a COA prior to a notice of appeal being filed.

## V. CONCLUSION

For the foregoing reasons, Zarate's motion pursuant to 28 U.S.C. § 2255 (D.E. 77, 92) is DENIED. Zarate is also denied a Certificate of Appealability.

It is so ORDERED this 19th day of August, 2009.

                                            _____
                                                     JOHN D. RAINEY
                                             UNITED STATES DISTRICT JUDGE